STAPYLTON v. CIE DES PHOSPHATES DE FRANCE.

(Circuit Court of Appeals, Fifth Circuit.    March 1, 1898.)

No. 623.

BANKS AND BANKING—RECEIVERS.

> Defendant deposited in bank a draft drawn on its New York correspondent, having theretofore slightly overdrawn its account. The draft was passed to defendant's credit, and checked against. On suspension of the bank, defendant stopped payment of the draft by telegram, whereupon plaintiff sued as receiver to recover on the draft. *Held*, that he was entitled to recover only the amount due the bank after charging back the draft.

In Error to the Circuit Court of the United States for the Southern District of Florida.

This was a suit brought by G. C. Stapylton, as receiver of the First National Bank of Ocala, against the Cie des Phosphates de France, a corporation under the laws of France, upon a draft for $3,000, directed to Lazard Freres. The draft was duly presented for acceptance, and dishonored, of which the defendant had due notice. The defendant pleaded that the bank did not own the draft, and pleaded a set-off of $2,665.13, a balance on deposit account of the First National Bank of Ocala at the time of the suspension of the bank, and also a claim of set-off of $500 by reason of a certain draft drawn by the Ocala Bank in favor of the Live Oak Bank upon the National Bank of Jacksonville,—a draft which was the property of the defendant, and represented money which defendant had placed with the Ocala Bank to purchase said draft. The cause was submitted to the judge without a jury, and the plaintiff proved the draft was made and executed by the defendant, and placed to the credit of defendant in the Ocala Bank as cash, and drawn upon as cash; that the draft was sent to New York for collection; that the draft was returned from New York, having been presented for payment, and payment refused; that payment was refused by Lazard Freres because payment was stopped by a telegram by the defendant through its manager, P. Levy; that by the course of dealing between the defendant and the bank, the bank had been in the habit of receiving such drafts as cash, and crediting the same to the defendant as cash, and that this draft was entered both on the bank's books and on the book of the defendant, or by a receipt given it, as so much cash deposited. The defendant sought to show that of this $3,000 there was a credit balance of $2,665.18 on the books of the bank at the time of the failure. The plaintiff objected to the intro-

duction of this evidence on the ground that defendant was not entitled to set off the said alleged credit balance, and allowing the said set-off being equivalent to permitting the defendant to make itself a preferred creditor by its own action in refusing to pay the $3,000 draft; that such proceeding was contrary to the acts of congress controlling national banks.

The statement and findings of the court below are as follows:

"That the defendant, by its general manager, P. Levy, deposited in the First National Bank of Ocala, of which the plaintiff herein is the regularly appointed and qualified receiver, on the 16th day of April, 1895, its check on Lazard Freres, New York, for $3,000. payable to the order of said bank. That the same was credited to the defendant's general deposit account on the books of the said bank. That defendant had been accustomed to so deposit checks to be drawn against after the officers of the defendant company had exhibited to the officers of the bank advices by cable from their Paris office authorizing such checks. There was no contract or agreement between the parties with regard to the treatment of such checks, but they were usually placed to the general account of the defendant, and drawn against as funds were required. There had been certain checks drawn by the general manager of the defendant company upon the bank, which were outstanding at the time of this deposit, to the extent of $777.30, which was paid, and charged to the account of the company. That the said check of $3,000 was not paid upon presentation to the drawee in New York, and the protest fees amounted to $1.31, which were paid by the plaintiff. That allowing the defendant the $3,000 credit given it for the unpaid check, there was to the credit of the defendant company by said bank, at the time of insolvency, $2,665.18; but charging back the $3,000 credited for said check there was an overdraft of $334.82 due said bank; and the court fails to find sufficient evidence of the indebtedness of the plaintiff to the defendant of the $500 pleaded as set-off by said defendant to find such set-off. And the court finds as a mixed matter of law and fact that the defendant company is indebted to the plaintiff in the amount of $334.82, and interest to the amount of $50.70, making a total amount of $385.52, for which judgment should follow, together with the costs to be herein taxed and allowed."

J. C. Cooper, for plaintiff in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PER CURIAM. As a jury was waived in the court below, the findings of fact by the judge are controlling in this court; and, considering those findings, applying the principles declared in Railway Co. v. Johnston, 133 U. S. 566, 10 Sup. Ct. 390, and Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, the judgment of the circuit court does substantial justice between the parties, and is therefore affirmed.