(89 Misc. Rep. 404)

### CARNEGIE TRUST CO. v. KISTLER et al.

(Supreme Court, Appellate Term, First Department. March 18, 1915.)

1. BILLS AND NOTES ☞245—LIABILITY OF INDORSER—ABSOLUTE LIABILITY AS SURETY.

After a note was protested and due notice given to the indorser, he became liable to the holder, not as a surety, but absolutely and independently of the liability of the maker, and the fact that the note matured subsequent to the holder's insolvency made no difference in its receiver's action.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 558, 559; Dec. Dig. ☞245.]

2. BANKS AND BANKING ☞135 — ACTION AGAINST DEPOSITOR ON NOTE — SET-OFF.

Under Code Civ. Proc. § 501, subd. 2, providing that any cause of action on a contract existing at the commencement of the action may be set off, an indorser whose liability to a bank after protest and due notice had become absolute and independent of that of the maker, was entitled to set off the balance due from the insolvent bank upon his deposit.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 375–379; Dec. Dig. ☞135.]

3. BANKS AND BANKING ☞82—INSOLVENCY—ACTIONS BY OR AGAINST RECEIVER—BURDEN OF PROOF.

Upon a resort to equity to procure a set-off, the complainant must show that he is entitled to equity and that he has no adequate remedy at law against a primary obligor; but in view of the Code of Civil Procedure, allowing a cause of action on a contract existing at the commencement of the action to be set off, a bank's receiver, suing an in-

dorser after protest and due notice, upon the indorser's attempt to set off the bank's existing indebtedness to him on his deposit, had the burden of proving the financial condition of the primary obligor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 203–209½; Dec. Dig. ☞82.]

4. BILLS AND NOTES ☞460—CAUSE OF ACTION—PARTIES—MAKER AND INDORSER.

The cause of action against the maker of a note and the cause of action against an indorser may at the holder's election be proceeded upon in separate actions or joined in one action, not because they state but one cause of action, but because they are causes of action arising out of the same transaction.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1434–1443; Dec. Dig. ☞460.]

5. BANKS AND BANKING ☞135—INSOLVENCY—ACTION BY RECEIVERS—SET-OFF—PREFERENCE.

In an action by the receiver of an insolvent bank against an indorser, who after protest and due notice was liable independent of the maker's liability, a set-off of the bank's existing indebtedness on a deposit was not in violation of the state Banking Law (Consol. Laws, c. 2), looking to a ratable distribution of the assets of a bank in liquidation by the state banking department among its creditors, nor of the provision of the National Banking Act (Act June 3, 1864, c. 106, 13 Stat. 99) as to illegal references.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 375–379; Dec. Dig. ☞135.]

Appeal from City Court of New York, Trial Term.

Action by the Carnegie Trust Company against Milton S. Kistler, impleaded with the Florida Tie & Lumber Company. From a judgment dismissing the complaint as against the defendant Kistler, plaintiff appeals. Affirmed.

Argued February term, 1915, before GUY, PENDLETON, and SHEARN, JJ.

Carmody, Blauvelt & Kellogg, of New York City (Wilbert Ward, of New York City, of counsel), for appellant.

Culver & Whittlesey, of New York City (Chesleigh H. Briscoe, of New York City, of counsel), for respondents.

SHEARN, J. This is an action against the Florida Tie & Lumber Company, as maker, and Milton S. Kistler, as indorser, of a four-months promissory note for $3,750, dated November 14, 1910. The note was negotiated and delivered to the plaintiff, Carnegie Trust Company. $2,925 was paid or credited thereon, leaving a balance of $826.-30 and interest due the plaintiff when the note matured and was protested. The superintendent of banks of the state of New York took possession of the plaintiff for the purpose of liquidation on January 7, 1911, and thereafter continued in such possession. When the superintendent of banks took possession, the defendant Kistler had $2,-500 on deposit with the plaintiff. Dividends aggregating 35 per cent. were paid by plaintiff to creditors, and the dividends payable to Kistler were credited on account of his liability on the note. At the commencement of this action a balance of $1,575 was still due Kistler on his deposit, which balance Kistler, when sued herein, offered to set off to the plaintiff, or so much thereof as would be sufficient to satisfy

plaintiff's claim. The defendant Florida Tie & Lumber Company failed to appear or plead and a default judgment was taken against it. On the trial, a jury was waived by consent, each side stipulated to the correctness of the facts alleged in his adversary's pleadings, and without further proof each moved at the end of the whole case for judgment. It does not appear from the pleadings whether the defendant Florida Tie & Lumber Company was solvent or insolvent, and plaintiff claims that the court erred in allowing the set-off because the defendant Kistler neither pleaded nor proved any facts showing that he could not seek indemnity from the maker for any sums he was compelled to pay on the note.

[1] Section 501, subd. 2, of the Code of Civil Procedure defines legal set-off as follows:

"Any other cause of action on a contract, existing at the commencement of the action."

When the note was protested and due notice given to the indorser, Kistler, he became liable to the plaintiff, and his liability was not that of a surety, but was absolute and independent of the liability of the maker. The fact that the obligation matured subsequent to the plaintiff's becoming insolvent makes no difference, for, as was said concerning the obligation of an indorser in Yardley v. Clothier, 49 Fed. (C. C.) 337, affirmed 51 Fed. 506, 2 C. C. A. 349, 17 L. R. A. 462, and approved by the Supreme Court of the United States in Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059:

"His undertaking was complete, and his obligation absolute, when he placed his name on the note. Nothing remained for him to do. * * * The fact that he might be discharged by act of the maker, or failure to protest and give notice, is unimportant. * * * Whatever character, however, may be ascribed to the defendant's obligation, the receiver took it, such as it was, subject to the right of set-off which the defendant then had."

[2] When the superintendent of banks took possession of the plaintiff, and at the commencement of this action, a cause of action on a contract, namely, upon the deposit belonging to the defendant Kistler, existed in Kistler's favor, and on being sued by the plaintiff upon an obligation that existed at the time the superintendent of banks took possession, though it matured thereafter, the defendant Kistler is clearly within the terms and is entitled as a matter of right to claim the set-off under the statutory provision of section 501 of the Code of Civil Procedure.

But the plaintiff insists that to allow an indorser who can obtain indemnity to set off constitutes a preference, in violation of the state Banking Law, and that the burden is upon the indorser, before a set-off will be allowed, to prove that he cannot obtain indemnity. It is admitted that the point raised by the plaintiff is now presented for the first time in this state, although it is claimed that the principle contended for by the plaintiff was applied at Special Term in Borough Bank of Brooklyn v. Mulqueen, 70 Misc. Rep. 137, 125 N. Y. Supp. 1034. An examination of that case, however, discloses that it was conceded that the maker of the note was solvent.

It is stated that the question has been directly decided by the Supreme Court of the state of Tennessee, in favor of plaintiff's conten-

tion, in Knaffle v. Knoxville, etc., Trust Co., 128 Tenn. 181, 159 S. W. 838, 50 L. R. A. (N. S.) 167. That was a petition by a comaker on a note, who was in fact an accomodation party, to offset a deposit with the holder, an insolvent banking institution, although it appeared that the real maker was not insolvent. The question was stated by the court as follows:

"The question here presented for determination, therefore, recurs: Is the surety on a note held by the receiver of an insolvent bank entitled to have set off against the same the amount of an individual deposit due the surety by the bank, when the bank is not suing, and the maker and primary obligor is solvent?"

Obviously, the answer to that question did not decide directly or indirectly the question here presented, where the bank is suing, and it does not appear that the maker is solvent.

[3] In fact, all of the cases relied upon as supporting in principle plaintiff's contention are cases involving equitable set-off and attempts initiated by the depositor to procure the allowance of an equitable set-off. It is one thing to resort to equity to procure a set-off in proceedings against the receiver of an insolvent bank, and quite another, when attacked by the bank, to defend one's self by interposing a legal set-off. In the former case, the applicant for equity must show that he is entitled to equity, and this makes it incumbent upon him to show that he has no adequate remedy at law against a primary obligor. In the latter case, being attacked by the bank or its receiver, the party claiming the right of set-off merely interposes as a defense authorized by statute an existing indebtedness of the bank to him.

Furthermore, the ordinary rule as to the burden of proof shows that in the latter case the burden of proving the financial condition of the primary obligor should be upon the party *resisting* the set-off. The burden of proof is upon the party having the affirmative of any given proposition. Here the statute allows the set-off, but the plaintiff seeks to overcome the statutory defense because of the financial condition of the primary obligor. In other words, the plaintiff has the affirmative in attempting to resist or overthrow the statutory defense, and the burden of proof on this issue naturally and properly goes with the affirmative.

[4, 5] As to whether such a set-off as was allowed below constitutes an illegal preference, the case of Curtis v. Davidson, 164 App. Div. 597, 150 N. Y. Supp. 305, is pertinent and very persuasive. The court, passing directly upon this point, says:

"The appellant admits that, if the action were against the makers of the notes, they would be entitled to set off their deposit balances in reduction, pro tanto, of the claims asserted against them; but he claims the allowance of such set-off to an indorser, in, the absence of an allegation of the makers' insolvency, would result in an unlawful preference in favor of the indorser— in other words, that an indorser should not be allowed to set off his deposit balance against his liability on a note, without alleging and proving the inability of the maker to pay. I have, however, been unable to find any authority which holds that, when the indorser alone is sued, his right to .set off a balance standing to his credit when the bank became insolvent is dependent upon his alleging and proving the insolvency of the maker, and I can see no good reason why such set-off should not be allowed. The receiver acquired the assets of the bank subject to all defenses and set-offs which

might have been interposed in an action brought by it"—citing Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059.

The fact that in that case the action was against the indorser alone, while in the case at bar the action was against both the maker and an indorser, can furnish no ground for distinguishing the two cases, or for claiming that the principle of law applied in the Curtis Case is not applicable to the defendant indorser here. The contract of the maker of a note and the contract of an indorser are separate and distinct causes of action, admitting of separate, distinct, and dissimilar defenses. The cause of action against the maker of a note and the cause of action against an indorser of the same instrument may at the election of the holder of the note be proceeded upon in separate actions or joined in one action. This is not because they constitute but one cause of action, but because they are causes of action arising out of the same transaction. If, as held in the Curtis Case, an indorser in an action against him alone may avail himself of such set-off, it cannot be true that the holder of a note, by electing to join the maker as a party defendant, in order to pursue a distinct and separate cause of action against the maker upon a separate and distinct contract, may defeat the indorser's right of set-off. The rights and remedies of the holder of the note and the rights and defenses of an indorser arising out of a contract of indorsement cannot be affected by the joinder or nonjoinder as a party defendant of the maker of the note, who is not a party to the contract of indorsement.

It is true that in the Curtis Case the National Banking Act was under consideration; but there is no force in the contention of the plaintiff that the National Banking Act was designed to prevent fraudulent transfers of assets rather than to secure the object attributed to the New York Banking Act by our Court of Appeals, namely, "a ratable distribution of the assets of a bank in process of liquidation by the state banking department among its creditors." In Building & Engineering Co. v. Northern Bank, 206 N. Y. 400, 99 N. E. 1044, where the defendant was a domestic banking corporation in the possession of the superintendent of banks of the state of New York, the Court of Appeals, construing the state Banking Act, cites with approval the opinion of the court in Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059, which holds:

"Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

The rule in question laid down by the federal courts in construing the National Banking Act has therefore been followed by the courts of this state in construing the National Banking Act and in construing the New York state Banking Law.

Judgment affirmed, with costs. All concur.