In re WINGERT et al.

Nos. 5122–5126.

District Court, D. Maryland.

Nov. 6, 1936.

Ellsworth R. Roulette, of Hagerstown, Md., for receiver for Bank.

Alexander Armstrong, of Baltimore, Md., and Robert H. McCauley and Edward Oswald, Jr., both of Hagerstown, Md., for trustees.

WILLIAM C. COLEMAN, District Judge.

The question before the court relates to the method of computing dividends due the First National Bank of Hagerstown, Md., which is a creditor of each of the five bankrupts, namely, William, Lewis, Henry, and Miller Wingert, brothers, and Martha A. Wingert, their sister. The referee has stated an account in each of the five proceedings, and the First National Bank of Hagerstown has filed exceptions to the ratification of each of these accounts on the ground that the referee in bankruptcy is in error in the computation of the dividend due in each case to the bank, for the reasons hereinafter set forth. Since the facts are the same in each of the five proceedings, except as to amounts involved, and since the exceptions of the bank are also identical in all of them and the referee and trustees in bankruptcy are the same, for the purposes of this opinion all five of the cases will be considered together.

The pertinent facts are as follows: The First National Bank of Hagerstown became insolvent and its affairs were placed in the hands of a receiver appointed by the Comptroller of the Currency of the United States on or about October 5, 1931. For some years prior to that time, the bank had been acting as a depositary for bankruptcy funds in Alleghany county, Md., pursuant to formal designation by this court. The balance due the trustees in all of the five estates at the time of the bank's failure was $82,463.98, representing deposits made by the trustees. Whatever sum the trustees in bankruptcy may have received or may later receive, because of a surety bond given to the United States as security for bankruptcy deposits in this bank, pursuant to section 61 of the Bankruptcy Act (11 U.S.Code, § 101 [11 U.S.C.A. § 101]),

need not be first deducted. A secured creditor of an insolvent national bank may prove and receive dividends upon the face of his claim as it stood at the time the bank became insolvent, without crediting either his collateral or collections made therefrom or payments from sureties, after such time, provided, of course, that dividends must cease when, from them and from payment from these other sources, the claim has been paid in full. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S.Ct. 360, 43 L.Ed. 640; Jenkins v. National Surety Co., 277 U.S. 258, 48 S.Ct. 445, 72 L.Ed. 874.

On the above amount of $82,463.98 the bank has declared and actually paid to the trustees in bankruptcy a 53 per cent. dividend in liquidation, namely, $43,705.-10. The trustees in bankruptcy on their part, by several dividends declared in the five estates, allowed to the bank a total in such dividends of $15,612.48, no part of which sum, however, has yet been paid but is being withheld by the trustees. The referee, in stating his accounts in each of the five estates, shows the amount of the bank's claims in each and the amount of the respective dividend allowed and payable thereon, stating merely that distribution of the same "is to be set off against the deposit of the trustees in said closed bank." The bank's receiver has excepted to this on the ground that such dividends should in each of the five estates first be deducted from the original amount of deposits in the bank at the time it became insolvent, and that therefore dividends paid by the bank to the trustees in bankruptcy should be computed on the resultant figure, because unless the same is done it is asserted that the bank will have paid as dividends to the bankrupt estates on the basis of a higher rate than the rate of payment to the bank's other creditors, thereby creating a preference in favor of the bankrupt estates. The referee and the trustees ask for the court's instructions as to whether they should not treat the accounts otherwise, i. e., compute the dividends paid by the bank upon the amount of deposits in the bank standing to the credit of the various estates at the time of the bank's failure, without first deducting dividends allowed by the trustees. The question is thus squarely presented to this court as to what is the proper method of calculation that the referee shall adopt in making any distribution to the receiver of the bank.

First. The trustees' right of set-off is well established. Such has been squarely held in this circuit in Hood v. Brownlee (C.C.A.) 62 F.(2d) 675, on a similar state of facts, namely, where a state bank became insolvent while indebted to a trustee in bankruptcy for deposits made by the trustee, and the bank's claim against the trustee was upon a note of the bankrupt. Upon proof of the bank's claim in the bankruptcy proceedings, the State Bank Commissioner claimed that he was entitled to set off the bankrupt's debt on the note against the amount due by the bank to the trustee because of deposits made by him. The District Court allowed the claim of the bank as proved against the bankrupt estate, but directed that no dividend should be paid thereon until other unsecured creditors of the bankrupt estate should have received in dividends on their claims pro rata amounts equivalent to the amount of the deposits owing to the trustee in bankruptcy. From this order, an appeal was taken by the State Bank Commissioner. In its opinion affirming the action of the lower court, the Court of Appeals said (Chief Judge Parker), 62 F.(2d) 675, at pages 676, 677:

"It is perfectly clear that the bank had no right to set off the debt of the bankrupt against the deposit of the trustee, for the reason that the debt due by the bankrupt to the bank and the debt owing by the bank to the trustee on account of the deposit were not mutual debts or credits within the meaning of section 68 of the Bankruptcy Act, 11 U.S.C.A. § 108; Western Tie & Timber Co. v. Brown, 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571. And see note in 71 A.L.R. at page 806 and cases there cited. They were not owing by and to the bank 'in the same right.' The claim of the bank arose out of the individual debt of the bankrupt, and the only liability of the trustee with respect thereto was to apply upon it a pro rata portion of the assets of the bankrupt estate under the order of the court of bankruptcy. The liability of the bank on the deposit made by the trustee was to the trustee as representative, not of the bankrupt alone, but also of the creditors of the bankrupt estate. If the bankrupt himself had made the deposit with a view of giving the bank a preferential payment on its claim, the bank would not have

had the right of set off. Citizens' Nat. Bank v. Lineberger (C.C.A.4th) 45 F.(2d) 522, 529. A fortiori, the bank may not obtain a preference by setting off a debt due by the bankrupt against estate funds deposited by the trustee.

"The question that next arises is whether the trustee in bankruptcy may set off the liability of the bank for the balance of the deposit against dividends to which the bank may become entitled on its claim allowed against the bankrupt estate, which is what the order appealed from virtually allows. As above indicated, we think that he may. The deposit is due by the bank to the trustee as representative of the estate of the bankrupt. Dividends are payable by him in the same capacity. The debts arising out of the deposit and the liability for dividends are, therefore, mutual and in the same right; and there is no reason for denying to the trustee the right of set off. To look at the matter in another way, the bank received funds of the estate when the deposit was made. Now, when its insolvency has precluded the trustee from recovering these funds, it should not receive additional funds by way of dividends until other creditors of the estate have shared on a pro rata basis to an equal extent.

"A case which we regard as 'on all fours' with the case at bar is Gardner v. Chicago Title & Trust Co., supra, 261 U.S. 453, 43 S.Ct. 424, 67 L.Ed. 741, 29 A.L.R. 622. In that case the trustees in bankruptcy had deposited funds belonging to a bankrupt estate in a bank to which the bankrupt was indebted on a note and which had filed a claim against the estate. The bank later became insolvent. On a petition by the trustee in bankruptcy to set off the deposit against the claim of the bank, the Supreme Court reversed the action of the lower court in denying the set off and authorized the bankruptcy court to withhold dividends on the claim of the bank until the debt due the trustee on account of the deposit of funds should be repaid. This was precisely what was done in the case at bar. * * *

"The trustee's liability to the bank is not for the face of the claim but for dividends which may be allowed upon it; and it is but equitable that against this liability he be allowed to set off the deposit which was made by him in the same capacity as that in which he is charged with liability for dividends. There can be no doubt that an individual who had deposited funds in the failed bank would have had the right to set off the deposit against a liability to the bank; and we see no reason why a fiduciary, such as a trustee in bankruptcy, would not have the same right. A receiver who had borrowed from a bank on receiver's certificates would certainly be allowed to set off a deposit against his liability on the certificates; and the same principle would permit the trustee in bankruptcy to set off the deposit against dividends."

■ Second. The next question—and one which was not considered in Hood v. Brownlee, supra, so far as appears from the court's opinion, or in any reported case of which we have knowledge—is: On what amount should the dividend paid by the bank be computed, namely, only on the amount of the deposits due the trustees in bankruptcy at the time the bank failed *after* the dividend declared by the trustee in bankruptcy has been set off or deducted (as the bank claims); or on the full amount of the deposit as the trustees in bankruptcy claim?

The first method is the correct one. Section 68a of the Bankruptcy Act (11 U.S.Code, § 108 (a), 11 U.S.C.A. § 108 (a), provides: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, *and the balance only shall be allowed or paid.*" (Italics inserted.)

In Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059, the A bank loaned money to the B bank for which the latter gave a note. The proceeds of this note, less the discount, were deposited in the A bank to the credit of the B bank to meet all checks or drafts of the latter and to pay the note when due. The A bank became insolvent and its receiver sued the B bank on the note. The Supreme Court held that the B bank could set off the balance remaining on deposit to its credit at the date of insolvency and that the receiver of the A bank could recover only the difference, even though at the date of the insolvency of the A bank the latter's claim against the B bank was not yet due. The court said, 146 U. S. 499, at page 510, 13 S.Ct. 148, 151, 36 L.Ed. 1059: "Where a set-off is otherwise valid, it is not perceived how its al-

lowance can be ·considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

In paying dividends in liquidation, or distribution of assets of insolvent national banks, the Comptroller must make only ratable dividends on all like claims; that is to say, all creditors of a like class must be treated the same way. See Revised Statutes, § 5236, 12 U.S.C. § 194 (12 U.S.C.A. § 194). In White v. Knox, 111 U. S. 784, 4 S.Ct. 686, 28 L.Ed. 603, a national bank became insolvent and a receiver was appointed. At the time of its insolvency B had a claim against the bank which the Comptroller refused to allow. Subsequently B sued and recovered a judgment for the amount of the claim, with interest. The Supreme Court held that it was proper for the Comptroller to pay dividends to B on the amount his judgment was worth at the date of the failure of the bank, rather than on the face amount of the judgment. See, also, Scott v. Armstrong, supra.

· If the contention of the bank is not adopted, a preferential payment to the bankrupts would result as will appear from the following figures:. At the time the bank closed the amount of deposits to the credit of all of the five bankrupt estates was $82,463.98. On this amount the bank has paid a dividend of 53 per cent., or $43,705.10, leaving a balance still due to the trustees in bankruptcy of $38,758.-88. Deducting from this figure the amount set off by the trustees, that is to say, the dividends declared in the bankruptcy estates and due to the bank, namely, $15,-612.48, there is a balance left due the trustees of·$23,146.40. But, unless the amount of the set-off, $15,612.48, is deducted from the amount of the deposits at the time the bank failed, it will be seen from these figures that the trustees in bankruptcy will have been paid approximately 71 per cent. of their claim, that is, they will have received $59,317.58 out of a total claim of $82,463.98; whereas, the bank's other creditors will have received only the 53 per cent. dividend. In other words, the set-off of $15,612.48 should be deducted from $82,463.98, leaving a balance of $66,851.50, and on this amount the dividend of 53 per cent. should be calculated, and thus there will be due the trustees in bankruptcy $35,431.29. Since, however, they have been paid $43,705.10, they have been overpaid in the amount of $8,273.81, and this amount the bank is, therefore, entitled to recover, or to withhold from future dividends that its receiver may pay. Of course, the balance of $31,420.21, that is, the differehce between $66,851.50 and $35,431.29, is still due to the trustees in bankruptcy but is only payable if and when additional dividends are made by the bank's receiver. In accordance with the computation just made, it will be seen that the trustees will have received 53 per cent., and no more, of their actual claim which is the pro rata distribution and the only one which it is permissible for the bank to give to all of its creditors.

It appears that the bank may pay an ' additional 12 per cent. dividend, making a total dividend in liquidation of 65 per cent. Should this be the case, since the trustees have already received as the 53 per cent. dividend the sum of $43,705.10 and would receive $43,453.47 on the basis of a 65 per cent. dividend on $66,851.-50, and not on $82,463.98, there would be a final balance still due the bank of $251.-63.

A third or alternative method of calculation has been proposed by the bank. It is based upon the principle that since the bank is equitably entitled to a portion of the assets of the bankruptcy estates, in the proportion that the bank's claim bears to all other claims against the estates, it is therefore entitled to offset such proportion of the amount of the deposits due the bankruptcy estates against the bankrupts' indebtedness to the bank. In other words, it is suggested that the proportion of the claim of the bank to all claims against each of the five bankrupt estates should be ascertained; that then a portion of the amount of deposits due by the bank in the same percentage should be offset against a portion of the debt of each bankrupt estate to the bank; and that on this basis dividends should be paid by the bank to each bankruptcy estate upon the amount, thus diminished, of the liability of the bank in each case.

This alternative proposal is not believed to be sound. Suffice it to point out that it is directly contrary to the ruling laid down in Hood v. Brownlee, supra, the opinion in which has been extensively quoted in this opinion and from which it will be seen that a bank may not set off a bankrupt's debt to it against a bankruptcy trustee's deposit in the bank, since the amounts involved are not *mutual* debts or credits within the Bankruptcy Act.

An order will be signed directing the referee, in stating his account, to adopt the method of calculation herein determined to be correct.