**RELIANCE INSURANCE COMPANY, Plaintiff,**

v.

**SHRIVER, INC., Defendant.**

**No. 98 C 5211.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 11, 1999.

---

Julie P. Silver, Querrey & Harrow, Ltd., Chicago, IL, Victor J. Piekarski, O'Hagan, Smith & Amundsen, L.L.C., Chicago, IL, James A. Shanman, Edwards & Angell, L.L.P., New York City, for Reliance Insurance Company, plaintiff.

Richard R. Winter, Sarah Elizabeth Pace, McBride, Baker & Coles, Chicago, IL, for Shriver Inc., defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Reliance Insurance sued Shriver, Inc. in this diversity suit, alleging that Shriver owes it money for premiums on an insurance policy issued by the Home State Insurance Group on Reliance paper to Shriver's client the Robinson Bus Company. Shriver has filed a motion for summary judgment, which we grant for the reasons stated below.

### HISTORY

Shriver, an insurance agency, entered into a contract with Home State to act as Home State's agent. In that capacity, Shriver had the authority to solicit, receive, and accept proposals for insurance. Additionally, Shriver was responsible for collecting and remitting premiums on insurance policies issued under the contract. (12M Statement Ex. A, Agency Agreement of May 19, 1995, between Shriver and the Home State; Ex. B, Agency Agreement of Feb. 27, 1997, between Shriver and Home State.) Home State sold insurance on behalf of out-of-state insurance companies, referred to as "fronting companies." Pursuant to contract, Home State was the instate agent of the fronting companies. Up until May 1997, Home State sold insurance on behalf of Security Insurance Company; Home State also sold insurance on Reliance paper.

Under its agreement with Reliance, Home State sold insurance on behalf of Reliance, collected the premiums, and deposited the premiums into an account that Reliance controlled. Reliance then kept a percentage of the premium, the "fronting fee", and paid the remainder to Home State in the form of a "reinsurance premium". The contract governing the relationship between Home State and Reliance authorized Home State to perform "all services necessary for the reconciliation, collection and safekeeping of premiums," in addition to "processing of cancellations and endorsements and calculation and payment of return premiums and commissions." (12M Statement Ex. D, Reinsurance Agreement between Reliance and Home State § 3(b) & (d).)

The specific policies at issue here insured the Robinson Bus Company.[1] The first policy was issued by Shriver via Home State on Security paper and covered September 1, 1996 through September 1, 1997 ("Security Policy"). Robinson was apparently an excellent client because on May 1, 1997, Home State canceled the Security Policy and issued a new policy on Reliance paper at a lower rate ("Reliance Policy"). The economic result was that Home State owed Shriver approximately $219,000 in unearned premiums on the canceled Security Policy and Shriver owed Home State an undisclosed amount for the premiums on the Reliance policy.

On July 21, 1997, Shriver setoff Home State's debt to him against his debt to Home State and credited the return premium to Robinson Bus. (12M Statement, Shriver Aff. at ¶ 11.) On August 11, Shriver received the balance due from Robinson and, on October 27, 1997, forwarded the premium to Reliance. (*Id.*) Three weeks after the setoff, by letter dated August 12, 1997, Reliance informed Shriver that it was taking over the administration of all Reliance insurance policies and that Home State was no longer authorized to act on its behalf. (12M Statement, Tab I.) The letter instructed Shriver to forward premiums and all policy questions directly to Reliance. During October 1997, orders of liquidation were entered against the Home State Group. In December 1997, Reliance sought to create a retroactive agency relationship between itself and Shriver by submitting to Shriver a backdated Broker's Agreement. Shriver, however, refused to sign.

Reliance filed suit, asking this Court to invalidate the July setoff and order Shriver to pay the remaining premiums on the Reliance Policy. At oral argument, Reliance repudiated any contract or common law theory of recovery, instead affirming its sole claim to relief under 215 ILCS § 5/508.1 ("Any money which an insurance producer . . . receives for soliciting, negotiating, procuring, renewing, continuing or bonding policies of insurance shall be held in a fiduciary capacity, and shall not be misappropriated, converted or improperly withheld."). Reliance asserts that Shriver improperly setoff its debt to Reliance against Security's debt to Shriver and, therefore, Shriver improperly withheld money that it possessed in a fiduciary capacity. Shriver filed a motion for summary judgment maintaining that, at the time of the setoff, its sole duty (and debt) was to Home State and that the setoff was entirely proper because it occurred prior to August 12, 1997, when Reliance revoked Home State's authority. As a matter of law, Shriver was entitled to setoff its debt to Home State against Home State's debt to it. Therefore, we grant judgment in favor of Shriver and dismiss this case.

## ANALYSIS

The central issue in this case is whether Shriver properly setoff the unearned premium owed to it on the Security Policy against its debt on the Reliance Policy. Under Illinois insurance law, mutual debts between an insurance company and another person must be setoff. 215 ILCS § 5/206 ("In all cases of mutual debts or mutual credits between the company and another person, such credits and debts *shall be* set off and the balance only shall be allowed or paid." (emphasis added)). "Mutuality" is a temporal concept: " 'Mutual' in bankruptcy law means contemporaneous." *Stamp v. Insurance Co. of N. Am.*, 908 F.2d 1375, 1379 (7th Cir. 1990) (interpreting Ill.Rev.Stat. ch. 73 ¶ 818, subsequently recodified using identical language at 215 ILCS § 5/206). In

1. Reliance also is seeking return of premiums Shriver "collected" on a Reliance policy insuring White Transportation. (Compl. at ¶ 6.) At oral argument, Reliance stated that resolution of Reliance's contentions regarding the Robinson Bus policy are applicable to its identical contentions regarding the White Transportation policy. Thus, as the parties did at argument and in their briefs, we discuss only the Robinson policy; however, our decision applies equally to Reliance's contentions regarding the White policy.

other words, "mutual" as used in § 5/206 does not mean identical, or that the debts (or credits) must arise from the same insurance contract, policy or, even, company. Instead, to be mutual, the debt from each party to the other must arise at the same time.

The only pertinent exception to the general setoff requirement prohibits certain setoffs when liquidation is an issue:

No set-off shall be allowed in favor of an insurance agent or broker against his account with the company, [sic] for the unearned portion of the premium on any canceled policy, unless that policy was canceled prior to the entry of an Order of Liquidation or Rehabilitation, and unless the unearned portion of the premium on that canceled policy was refunded or credited to the assured or his representative prior to the entry of the Order of Liquidation or Rehabilitation.

§ 5/206. As explained in *Stamp*, "pre-bankruptcy debts may be offset, but ... a pre-bankruptcy debt may not be offset against a debt arising after the filing [of a bankruptcy petition]." 908 F.2d at 1380. Moreover, " '[t]he right of set-off may be asserted ... even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due.' " *Id.* (quoting *Scott v. Armstrong*, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892)).

*Stamp* dictates the outcome of this case. Shriver's obligation to pay Home State the premium on the Reliance Policy arose when that policy was issued (i.e., May 1, 1997). So too, Home State's obligation to refund the unearned premium on the canceled Security Policy arose when the Security Policy was canceled. Obviously the relevant dates occurred long before Home State and its affiliates were liquidated, as well as before Reliance revoked Home State's authority as its agent. Reliance has produced no evidence that setoff did not occur. Additionally, Shriver credited

the unearned premium to Robinson prior to Reliance's revocation of Home State's authority. Thus, Shriver properly setoff his debt on the Reliance Policy against Home State's debt on the Security Policy.

Reliance argues vociferously, but disingenuously, that Shriver's debt on the Reliance Policy was to Reliance, not Home State, in essence claiming that Shriver held the premium as a fiduciary of Reliance regardless of its relationship with Home State.[2] There is absolutely no evidence, however, that any of the parties to the contracts governing the relationships at issue understood Shriver's duty as flowing to Reliance. Reliance has not submitted any evidence that Shriver agreed to be its agent, and the contracts between Shriver and Home State clearly state that Shriver's duty was to Home State. (12M Statement Ex. A, Agency Agreement between Shriver and Home State Insurance Group, at 4, § V(1)(a)) ("The Agent [Shriver] as trustee of the Company [Home State] monies, agrees to be responsible for collection and remittance to the Company of all premiums collected or payable on insurance written under this Agreement.... Such funds shall not be used for any purpose other than Remittance to the Company.") In fact, prior to the revocation of Home State's authority, Shriver never dealt directly with Reliance on any matter pertaining to any policy issued on its paper and, especially important, never remitted a single premium directly to Reliance. We do not know of any law which automatically makes the agent (Shriver) of an entity (Home State), which is itself an agent, the agent of the entity's principal (Reliance), nor has Reliance revealed any such rule.

Reliance also argues that the agency agreement between Shriver and Home State did not authorize setoffs by Shriver. What Reliance does not seem to realize is that "statutes are a source of implied contractual terms .... [and] Illinois statute

---

**2.** As a counterpart to this argument, Reliance also contends that Home State did not owe Shriver the unearned premium on the Securi-

ty Policy, instead claiming that Security was liable for that debt.

law thus makes the right of setoff an implied term of any contract." *Selcke v. New England Ins. Co.*, 995 F.2d 688, 689 (7th Cir.1993). Reliance also rather weakly asserts that the agency agreements between itself and Home State, (12M Statement Ex. C, Reinsurance Parental Guaranty Agreement; Ex. D Administrative Endorsement), did not allow Home State to authorize the setoff. However, that just proves Reliance may have a cause of action against Home State.

### CONCLUSION

At base, the problem with this lawsuit is that Reliance has sued the wrong party. Of course the correct party, Home State, is in liquidation and, thus, we expect the probability of Reliance collecting the full debt from the proper party is minimal. But, however problematic that fact is for Reliance, the remedy certainly does not lie in bringing suit against Shriver which, at the relevant times, was entitled to act as it did.

Because Reliance has not produced any evidence from which a reasonable jury could find in its favor, we grant summary judgment in favor of Shriver and against Reliance. We instruct the Clerk of Court to enter judgment accordingly pursuant to Federal Rule of Civil Procedure 58.