LOVE, SUPERINTENDENT OF BANKS, *et al. v.* ROEBUCK *et al.*

(In Banc. Oct. 12, 1936. Suggestion of Error Overruled Nov. 9, 1936.)

[169 So. 827. No. 32232.]

376

Flowers, Brown & Hester, of Jackson, or appellant, J. S. Love, Supt. of Banks.

378

J. H. Currie, of Meridian, and Green, Green & Jackson, of Jackson, for appellants, Grady Graham and Peoples Bank.

380

382

**J. O. Walton, S. T. Roebuck** and **A. B. Amis, Jr.,** all of Newton, for appellees.

Argued orally by **Clyde Hester** and **Garner Green**, for appellant, and by **A. B. Amis, Jr.**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

On March 13, 1930, a run was made on the Bank of Union, as a result of which it was determined by its board of directors that it would be unable to open the following day. That night the board of directors adopted a resolution that the bank be closed for liquidation, with directions that the superintendent of banks be requested to take charge of its affairs. At the same time and immediately following the adoption of the said resolution and as a part of the same meeting, which was kept in session nearly all night, an arrangement was made by the directors of the Bank of Union with the Peoples Bank of Union, by which sufficient of the assets of the Bank of Union was delivered and assigned to the Peoples Bank to enable the latter bank to pay off all depositors and other creditors of the Bank of Union. This agreement was reduced to writing, and such steps were taken thereunder that all the depositors and other creditors of the Bank of Union were fully paid by the Peoples Bank.

On the 21st day of March, 1930, the superintendent of banks by his petition submitted jurisdiction of the liquidation to the chancery court, and on the next day the formal order was made by the chancellor taking over

full and complete jurisdiction. Shortly thereafter the appellant, H. G. Graham, was appointed liquidating agent, and he acted as such until succeeded by the appellee, Roebuck, upon the reorganization of the state banking department. On or about December 3, 1934, Love, as former superintendent, filed his final account in said liquidation, final so far as he was concerned, but not the final account in said liquidation, to which, on April 12, 1935, appellee Roebuck, joined by Mary L. Cole, hereinafter to be noticed, filed exceptions. The exceptions embraced many items, but, by agreement of the parties, at the hearing the exceptions were reduced to six. After full evidence taken, the chancellor overruled three of the six items and sustained three.

As to two of these items adjudicated against appellants by the chancellor, we are of the opinion that he was correct, to-wit, as to the item charging the liquidator for timber, and the item under which the appellant Graham was disallowed compensation for his services beyond amounts actually paid out by him. But we are of the opinion that the decree against appellants for the five thousand and forty-six dollars and seventy-five cents, paid to the Peoples Bank cannot be sustained in its entirety.

The facts about that item may be briefly stated as follows: Some time after the date of the aforementioned arrangement between the said banks, the Peoples Bank complained, and continued to complain, to the liquidator of the Bank of Union that among the assets turned over by the directors of the Bank of Union to the Peoples Bank there were several worthless items amounting to more than five thousand dollars, and that the worthlessness thereof was not only known to the directors of the Bank of Union at the time of the transfer, but to conceal their want of value the said directors at the time knowingly misrepresented the material and basic facts touching said items; and towards the end of the year,

that is to say of the year 1930, the Peoples Bank was urging some action in rectification of its claim of fraud upon it. The liquidating agent, Graham, submitted the matter to the superintendent, who advised that no settlement be made without the consent of the stockholders of the Bank of Union. The liquidating agent thereupon presented the question to the stockholders of the Bank of Union and obtained the written consent of five of the stockholders, representing, so he testifies, from eighty to eighty-five per cent. of all the outstanding stock, to make the settlement, the written agreement being as follows:

"We, the undersigned stockholders of the Union Bank, a banking corporation domiciled at Union in Newton County, Mississippi, hereby expressly give our consent to the proposed settlement between the Peoples Bank of Union and H. G. Graham, Liquidating Agent of the Bank of Union, whereby in consideration of the sum of $5,000.00 paid by H. G. Graham, Liquidating Agent, and delivery by him of the notes of H. G. Hester, for the sum of $2500.00, the said Peoples Bank of Union is to release the Bank of Union and/or the Liquidating Agent thereof, and/or the stockholders in said Bank of Union and/or the Bank of Union, from any and all claims, demands, actions or rights of action which the said Peoples Bank may now have, or hereafter have, against the Bank of Union, the Liquidating Agent thereof, the stockholders therein or the said Bank of Union.

"In testimony whereof, witness the signatures of the stockholders of the said Bank of Union hereunto affixed, on this —— day of January, 1931.

"G. W. Todd
"Mrs. Mary Cole
"W. R. Rivers
"W. N. McLemore
"I. M. Gallaspy."

Upon the execution of that agreement, the liquidating agent paid over to the Peoples Bank the amount men-

tioned in said stockholders' written consent, but without securing the consent of all the stockholders and without any order of the court.

Inasmuch as the settlement and payment was made by the liquidating agent without any order of the court so authorizing, the liquidating agent, the appellant Graham, primarily, and appellant Love, superintendent, secondarily, would be liable for the amount of money thus taken from the liquidating funds and paid over as aforesaid, had none of the stockholders consented. But even without an order of court appellants are not liable for that portion of said amount which would, upon the distribution of it, belong to the above-mentioned assenting stockholders.

We must look below the surface, and to the substance of the situation. As already mentioned, all the debts of the Bank of Union have long ago been paid, all its obligations have been discharged. Anything now recovered by the present receiver belongs, in equity, to the stockholders of the Bank of Union. They are the only remaining parties in beneficial interest. It is solely in their interest that the receiver now acts. Should decree be permitted to prevail against appellees for the said five thousand dollars with interest, the money when recovered thereunder would stand ready for distribution among the stockholders, so that the five stockholders who consented to the payment by appellees would recover their portion of the money which was paid by and after their consent that it should be paid. There is no such thing in equity as that a party or parties may expressly consent in due form to the doing of a particular act and thereafter turn upon the actor and recover money from him as a consequence of that same act; and since such parties may not themselves do so, they cannot accomplish the same result by acting through the offices of another for them.

It is urged, however, against the conclusion which we have reached and the directions which we shall give, that the five stockholders are not formal parties to the hearing on the exceptions by the receiver, and that unless summoned in for such a hearing, no adjudication affecting their interest may be made. This point is not well taken in any event as to Mrs. Cole and as to any share of the stock owned by her individually, because she joined in the exceptions. And as to the other four of the consenting stockholders, we quote from Dunn v. Love, 172 Miss. 342, 353, 155 So. 331, 332, 92 A. L. R. 1323: "It seems to be contended that a summons to all parties would have to be issued and served as if in the institution of a new suit. But the entire matter and all the parties in interest were already in court and had been for more than two years, or since the original institution of the liquidation proceedings, the notice then given as required by statute being all that was necessary to the presence of the parties and their continued presence until the liquidation proceedings were concluded. The liquidation proceeding was a quasi receivership. . . . In receivership and in liquidations, such as this, the court acts in all ordinary administration matters upon ex parte petition or motion and without formal notice to the parties in interest." The filing of accounts, including the said account of the former superintendent, was an ordinary matter in due course, and the statute requires no new notice in respect to that particular account.

The decree of the chancellor is affirmed in all respects except as to the item of five thousand dollars with interest, above discussed. As to this item, the decree is reversed, and the cause remanded, with directions that decree shall be rendered against appellants only for that portion of the said sum with interest which will represent the part thereof which would belong to the nonassenting stockholders as compared to the total amount of

the stock in the Bank of Union. We pretermit any discussion of the stock owned by J. M. Cole, deceased, the husband of Mrs. Mary Cole, and the question whether the assent of Mrs. Cole to the settlement had any force as against the estate of her husband is referred to the chancellor for his determination upon the facts when developed before him.

Affirmed in part; reversed in part, and remanded, with directions.

### DISSENTING OPINION.

**Ethridge, J.**, delivered an opinion dissenting in part.

I think the chancellor's decree should be affirmed in toto, and, consequently, I dissent from that part of the majority opinion reversing the judgment and remanding the case as to the five thousand and forty-six dollars and seventy-five cents, the payment by Graham, liquidating agent of the Bank of Union.

The agreement referred to in the majority opinion was between, and signed by, J. S. Love, superintendent of banks, of the first part, the Peoples Bank of Union, of the second part, and J. M. Cole, of the third part. This is an important factor in the decision of the case, because while it was approved by certain directors and officers of both the Peoples Bank of Union, and the Bank of Union, it was not, in legal effect, an agreement between these banks.

As stated in the majority opinion, on March 13, 1930, there was a "run" on the Bank of Union, and it was in jeopardy of failing. The directors were called and met after the banking hours, and adopted a resolution that it be closed for liquidation with a request that the state banking department take it over for liquidation, which was accordingly done. Thereafter negotiations were entered into with J. S. Love, through his agents, and presumably with his consent and knowledge, because he

afterward presented the agreement referred to, and the liquidation proceedings, to the chancellor for his approval.

J. M. Cole, one of the directors, and the principal stockholder of the Bank of Union, was active in the promotion of the agreement by which the Peoples Bank of Union assumed payment of all depositors and other creditors of the Bank of Union, for and in consideration of an assignment and transfer to the Peoples Bank of Union of the assets of the Bank of Union to a given amount. The Peoples Bank of Union agreed to accept certain assets, listed in the agreement, as compensation or consideration for its assuming to pay off the depositors of the Bank of Union. Among the assets so transferred to the Peoples Bank of Union were certain notes of A. G. Hester, secured by deeds of trust, which notes were not payable to order or bearer, and, therefore, were not negotiable. It appears that they were accommodation notes given to the Bank of Union by Hester who owed the bank nothing, and that the bank, through J. M. Cole, had given Hester an order stipulating that these papers were taken without consideration, for the accommodation of the Bank. The total amount of these notes was seven thousand five hundred dollars, but only five thousand dollars thereof was transferred to the Peoples Bank of Union. It was claimed by the Peoples Bank of Union that there were other notes which had been misrepresented to it by J. M. Cole, who had represented the Hester notes to be bona fide papers. The total amount claimed to have been fraudulently represented to the Peoples Bank of Union was considerably in excess of the five thousand and forty-six dollars and seventy-five cent item excepted to by Roebuck, receiver of the Bank of Union.

It appears from the record that after the agreement was entered into, the superintendent of banks, Love, presented same to the chancery court for approval, and the chancellor approved same; that J. S. Love, at the in-

stance of the directors of the Bank of Union, appointed J. M. Cole as liquidating agent of said bank, and that Cole died in less than a month from that date, and that, thereafter, at the instance of the old board of directors of the Bank of Union the superintendent of banks appointed H. G. Graham as liquidating agent, all of which appears to have been done in 1930, and within a short time after the superintendent of banks took over the Bank of Union for liquidation. Neither H. G. Graham nor J. S. Love filed any report with the court of the proceedings in liquidation until December 1, 1934, after the Legislature had passed an act abolishing the office of superintendent of banks, and creating a new agency to have charge of the liquidation of insolvent banks.

Although the Peoples Bank of Union found that the notes of Hester were not negotiable, and that, in fact, he owed the Bank of Union nothing, and that the notes were mere accommodation papers, and were fraudulently misrepresented by Cole and the other directors of the Bank of Union to the Peoples Bank of Union, it did not file with the chancery court any complaint, or seek any relief through the court, and never, at any time, until the filing of the exceptions to the final report of Love and Graham, sought any relief against the superintendent of banks, and the directors who had misrepresented the facts as alleged, but sought an agreement with H. G. Graham to make good the notes. H. G. Graham undertook to make an agreement by which he would turn over to the Peoples Bank of Union five thousand and forty-six dollars and seventy-five cents in cash, and the remaining A. G. Hester note for two thousand five hundred dollars secured by a deed of trust, and presented this proposed compromise to J. S. Love for approval, which he referred to his attorney, who notified Graham that he had no authority to make such a compromise, and not to make it unless all the stockholders of the Bank of Union consented thereto. All the stockholders did not

consent, but a portion did, and Graham, thereupon, turned over to the Peoples Bank of Union five thousand and forty-six dollars and seventy-five cents and the two thousand five hundred dollar note of Hester, on which note the Peoples Bank of Union has collected something over two thousand two hundred dollars, being the proceeds of a loan procured by Hester from the Federal Land Bank. But H. G. Graham, before consenting to pay over the money and turn over said note, obtained from the Peoples Bank of Union an agreement, in writing, that if H. G. Graham had to repay the money, the Peoples Bank of Union would reimburse him therefor.

The exceptions to the item mentioned, five thousand and forty-six dollars and seventy-five cents, were joined in by Mrs. J. M. Cole with Receiver Roebuck of the Bank of Union, who also excepted thereto.

The Peoples Bank of Union was not made a party defendant, and did not voluntarily come into court, and is not now in court. Neither was A. G. Hester made a party to the suit by being brought in as the principal creditor of the Bank of Union, or as having a legal right against said bank for the conversion of his note for two thousand five hundred dollars secured by a deed of trust, which was turned over in the proposed compromise. Neither were the stockholders of the Bank of Union brought into court by Graham or Love or any one else.

The chancellor, after hearing the full transaction, rendered an elaborate opinion, upon which the decree was drawn, in which he recited all the facts, and held that neither Graham nor Love had authority from the court, or under the law, to pay over any money under a compromise, and, as agent, had no authority to make any representations as to the solvency or collectibility of the assets turned over to the Peoples Bank of Union under said agreement. The chancellor held, however, that the two thousand five hundred dollar Hester note, being without consideration and not negotiable, did not injure the

liquidation, and that Graham had no authority to pay the five thousand and forty-six dollars and seventy-five cents in settlement of the alleged claim of the Peoples Bank of Union against H. G. Graham, arising out of false and fraudulent representations made by J. M. Cole and others to the agents of the Peoples Bank of Union concerning the collectibility and validity of certain assets of the Bank of Union in consideration of its obligation to pay the depositors and bills payable of the Bank of Union on the 14th day of March, 1930. That if any false and fraudulent representations were made to the Peoples Bank of Union by Cole and the other directors of the Bank of Union, Love and the liquidating agent were not liable therefor, but the persons making the representations were liable. Love and the liquidating agent had no power to make any representations, and were not liable for those made in their presence by others. The chancellor held that the contract between the Peoples Bank of Union, J. M. Cole and others, was not effective, but was, at most, a mere offer by the Peoples Bank of Union to J. S. Love, which he had no power to accept until authorized so to do by the court. In the course of his opinion, the chancellor said: "In this proceeding, the Peoples Bank of Union is not a party, and it cannot here contest with the present Receiver any of its rights, nor can the liquidating agent be excused because he thought, on the advice of Counsel, that he had a right to make the settlement. Honesty of purpose did not prevent the damage to the liquidation, and ignorance is often as harmful as wilful wrong. If the matter had been submitted to the court at a time when the facts were fresh in the minds of the witnesses, and the interest of the Peoples Bank of Union and the Superintendent of Banks were adverse to each other, the court would have been able to find the truth. Now, however, they are not adverse, but identical."

He further held that the act was clearly an unlawful one, citing Amis on Liquidation of Insolvent Banks, sec. 60.

I concur with the views of the chancellor that the liquidating agent had no authority to make a compromise and pay out funds without an order from the court, after a hearing of the facts, even if the court had the power, which I doubt, to ratify the proceeding which was undertaken by Graham, long after the facts had passed out of the minds of the parties.

It is said in the majority opinion that Roebuck represented all the stockholders and all the creditors, and that it was not necessary to bring them into court, as they were already there, citing Dunn v. Love, 172 Miss. 342, 353, 155 So. 331, 92 A. L. R. 1323, in which there had been a publication for the various depositors and creditors. Notice was there given in accordance with the directions of the court. In my opinion, notice to depositors and creditors should be given under the directions of the court. See Amis on Liquidation of Insolvent Banks, sec. 55, which reads as follows: "55. *Notice and Exceptions. Hearing and burden of proof.*—Before the account is heard or approved, the parties interested should have notice of the hearing given them in such manner and for such time as the Court may order. If the Superintendent shall desire that his account be approved, he should, after filing it, move the Court for an order specifying the time and manner of the notice. And any party interested in the estate may file exceptions to the account, but they must be specific and not general. A successor receiver as the representative of all the parties interested in the estate would seem to be a proper party to interpose such exceptions because any recovery had by reason of sustaining the exceptions would be properly payable to him for the common benefit of all the parties interested. But, in such a case, it is better practice for one or more persons interested, on their own

behalf, and that of all others interested, to join the successor receiver in his exceptions. . . . When such exceptions are filed, the Superintendent occupies the position of plaintiff and has the burden of showing that his account is correct in the particulars to which exception is taken. 34 Cyc. 454, 457.''

From the facts of the case at bar, I do not think the receiver of the Bank of Union was authorized to pass upon the question as to whether the stockholders referred to had agreed on a settlement, and they were not brought into court to show whether or not they had agreed, would agree, or whether the agreement was procured by Graham through fraud.

Also, it is more than possible that Hester would have a right of action against the Bank of Union and its receiver for the conversion of his two thousand five hundred dollar note to his hurt. He was not in court, and his rights could not be adjudicated against him. Section 55, Amis on Liquidation of Insolvent Banks, supra.

In my opinion, a receiver cannot represent parties whose interests are adverse, and they would not be bound by any proceeding through a receiver, until such proceeding has been brought into court where it can be excepted to, and the legality of his act challenged, should the stockholders and officers desire to do so.

The superintendent of banks, in the case at bar, did not call a stockholders' meeting for them to select a person to take care of the assets of the bank, as he might have done, but he continued in charge of the insolvent Bank of Union, and did not take proper steps to protect the interests intrusted to him. He should have exercised supervision over the liquidating agent to see that his duties were properly discharged, and if not, to take proper steps, before the court, to have a new receiver appointed.

Consequently, without protracting this opinion, I think the judgment of the court below should have been affirmed.