TOWNSEND v. BEAVERS et al.

(Division A. April 17, 1939. Suggestion of Error Overruled May 29, 1939.)

[188 So. 1. No. 33661.]

Percy M. Lee, Jr., of Forest, for appellants.

O. B. Triplett, Jr., of Forest, for appellees.

Argued orally by **Percy M. Lee** and **Percy M. Lee, Jr.,** for appellant, and by **O. B. Triplett, Jr.,** for appellees.

**Griffith, J.,** delivered the opinion of the court.

This appeal involves as its main issues, those presented by the amended and supplemental exceptions and objections of the heirs at law to the final account of the administrator, and their effort to surcharge that account, because of the payment by the administrator, out of the assets of the estate, of five notes which the heirs now aver were not legally probated against the estate.

Two of these notes were those of the Farmers and Merchants Bank, one for the original principal sum of $450 and the other for $1000. We are not permitted here to inquire into the validity of the probate of the aforementioned two notes, for the reason now to be stated.

About four years after the administration had been opened, and after the administrator had collected all the personal assets of the estate that could be collected, he

presented, on December 9, 1935, his petition to sell a part of the real property to pay the remaining debts of the estate, and, among these remaining debts or balances of debts, he listed in the petition as one of the items a balance due to the said Bank in the sum of $514.59. And he made as parties defendant to said petition all the eight heirs and distributees of said estate, all of them being adults.

Two of these heirs were nonresidents, and they were brought into court by published process. It is contended that this process was void, for the reason that the allegations in the petition did not sufficiently state the post office address of the two nonresidents—in fact, that the petition did not give any post office address at all. The decree recited that these nonresident defendants were served with process "by publication thereof in the News Register on February 27, 1936, and March 5, 1936, and March 12, 1936, and by mailing copies of said process to the said defendants to their post office addresses, and that said process is, in all respects, and in the service thereof, in accordance with the statutes, proof of all of which is on file in this cause." It is not shown by any proof in this record that there was not some sufficient affidavit for the process by publication, aside from the allegations in the petition itself; and in view of the decree the existence of such a sufficient affidavit will be presumed when there has been no such an affirmative showing as would exclude the existence thereof. Brotherhood Trainmen v. Agnew, 170 Miss. 604, 613, 155 So. 205.

The third of the heirs was summoned by process, personally served upon him, and the other five appeared by waivers. These waivers were in identical language, and one of them, as a sample of the others, is copied, as follows:

"In the Chancery Court of Scott County, Mississippi.

"Vacation Term, 1935.

"Estate of C. Beavers, Deceased.

"T. W. Townsend, Administrator.   No. 3846

"Waiver of Process and Entry of Appearance.

"Be it known that I, Edna Mae Beavers, an heir-at-law of C. Beavers, deceased, and in interest in said estate, do hereby waive the service of process upon me and enter my appearance in said cause whereby and wherein the administrator of said estate, pursuant to a decree of the court, has filed a petition to determine and set aside to the estate the exemptions provided by law, and to sell the residue of the land of said estate, or such part thereof as may be necessary, to pay the debts of said estate, and finally conclude the administration of said estate; and I hereby consent that said matter may be heard and determined at such time and place as the court may hear the same.

"Witness my signature this 7th day of December, 1935.

"Edna Mae Beavers."

"State of Miss.

"Scott County.

"Personally appeared before me, the undersigned authority in and for said county and state, Edna Mae Beavers, personally known to me, who acknowledged that she signed, executed and delivered the foregoing instrument on the day and year therein mentioned for the purposes therein stated.

"Witness my hand and seal of office this 16th day of December, 1935."

"B. R. Nichols, Chancery Clerk."

"Filed Jan. 3, 1936.

"B. R. Nichols, Clerk."

It will be observed that this waiver was acknowledged before the chancery clerk, and that it specifically and completely identified itself with the court, the matter and the particular petition therein to which it was addressed. It goes into greater particularity than is mentioned in

the new statute on this subject, Chap. 244, Laws 1936. Had this waiver been written at the bottom of the petition itself and acknowledged before the clerk, its validity would be without question, under Byrne v. Jeffries, 38 Miss. 533, 539. There is no substantial difference that it was written on a separate sheet of paper acknowledged before the clerk and filed by him in the cause; and it can make no substantial difference that the acknowledgments of the other four waivers were before a notary public, whose authority to authenticate such acknowledgments was as ample as that of the clerk or any other officer. The objections now urged against these waivers are not well taken. See 50 C. J., pp. 446, 447.

All of the heirs being thus in court, they made no contest of the petition, and a decree pro confesso was taken against them, and thereafter a final decree for the sale of the lands as prayed.

On a petition by an administrator to sell lands to pay debts it is essential to the maintenance of the petition that there be debts to be paid and that the asserted debts be set forth in the petition. This is more than simply a material issue; but the maintenance of the affirmative of that issue is essential, indispensable, to any decree at all on such a petition. And it is equally essential or indispensable that the asserted debts be legal debts, those which the estate is obligated to pay. And in order that unsecured debts shall be legal debts against an estate, it is essential that they shall have been probated in the manner and within the time allowed by law; in consequence of which, when a petition to sell lands to pay debts lists and sets up any particular debt as being an obligation of the estate, there is thereby tendered to the heirs or devisees who are made parties to that petition, the direct and vital issue, among others, whether the alleged debt or debts have been probated in the manner and within the time allowed by law.

And when brought into court in response to such a petition, the heirs allow a decree pro confesso and a final

decree to be taken against them, they thereby admit and there is thereby adjudicated against them, as one of the direct and vital issues involved, that the several debts specified in the petition have been duly and legally probated. The decree of sale could not in any event have been made except by the adjudication in the affirmative of that essential of legal probate; wherefore the heirs cannot subsequently litigate with the administrator, so as to adversely affect him, the question of the legality of the probate of any of the debts which were set up in the previous adversary petition; for, if they were subsequently allowed so to do and should prevail in their contention in the subsequent litigation, there would be two wholly inconsistent decrees in the same estate between the same adversary parties, namely, in one decree that the debt or debts in question were probated in the manner and within the time allowed by law and in the subsequent degree that the same debt or debts were not probated in the manner and within the time allowed by law.

This would be an impossible situation in legal allowance, and manifestly so, as it seems to us. The rule is that whenever any claim or demand is put in issue in a former suit and some matter or question directly essential to the maintenance of the claim or demand therein is adjudicated in said suit, this adjudication is conclusive in a subsequent litigation between the same parties wherein the same point, or question, or matter becomes directly essential to the maintenance of the asserted demand in the second litigation. See cases cited 34 C. J., pp. 817, 818, and 15 R. C. L., pp. 976, 977, sec. 451; Yazoo, etc., R. Co. v. Sibley, 111 Miss. 21, 25, 71 So. 167; Von Zondt v. Town of Braxton, 149 Miss. 461, 465, 115 So. 557; Cotton v. Walker, 164 Miss. 208, 144 So. 45; Mitchell v. State, 179 Miss. 814, 825, 176 So. 743.

The petition by the administrator to sell lands set up and alleged the original aggregate amount of these two notes of the bank, the payments that had been made

thereon, and the balance due on them, as aforesaid. There could be no balance due unless the notes had been legally probated, and the admission and adjudication under the petition that there was such a balance, was an admission and adjudication of all the essential constituents of that balance as a legal obligation of the estate, and per consequence that the said notes had been validly probated. It follows that the exception to the final account of the administrator, which challenged the payments by the administrator of these two notes to the bank, and which as its only basis of objection was that the notes had not been legally probated, should have been overruled and disallowed in its entirety.

In this connection notice may be taken of the point argued under the cross-appeal that the judgment creditors of two of the heirs were not made parties to the petition to sell the real estate. Section 1694, Code 1930, which deals with this matter of parties to such a petition, begins with the lead line "Heirs or devisees to be summoned" and then proceeds to provide that "all parties interested shall be cited by summons or publication." In Brickell v. Lightcap, 115 Miss. 417, 433, 76 So. 489, 494, it was said that this statute embraces as to parties "those who have a vested interest in the land itself—the heirs and devisees or the assignees of either," and, 115 Miss. on page 436, 76 So., page 489, the court said that the purpose of the statute was to require simply that the owners of the estate sought to be sold, should be brought before the court. We interpret that decision to hold that the parties to be included are those who are heirs or devisees, as such, or who are conventional vendees, mortgagees, or assignees under them, or whose interests had become the full and completed vested equivalent thereof, and none others. Wherefore judgment creditors, solely as such, of the heirs or devisees or of some of them are not necessary parties.

The other three notes were for hospital and medical services rendered to the deceased a short time before

his death. It is now admitted by all parties that although these notes were presented for probate within the time allowed by law, they were not probated in the manner required by section 1671, Code 1930.

When the intestate left the hospital, he executed to the hospital a note for the amount due it and to each of the two physicians who were in attendance a note for his services. Death followed soon after the return of the intestate to his home. On petition of all the resident heirs the appellant administrator was appointed a short time later. The administrator was not a member of the family, but was a neighbor banker. As soon as the six-month period for the probate of claims had expired, the administrator called together all of the eight heirs who were available, to discuss with them the claims that had been presented for probate. This was because it was recognized that the heirs would know, or ought to know, more about the merits and genuineness of the claims than would the administrator. This meeting was had in the office of the attorney who was handling the estate; and it seems fairly certain that as many as five of the eight heirs were there present, one of whom was present at the hospital when the three notes mentioned in this paragraph were executed.

At this meeting the three notes last mentioned were particularly discussed, and all present expressed the wish that they be immediately paid. It was known to all what they were for and the genuineness of the debts and the merits of the services to the deceased for which they were given. In accordance with the wishes of the heirs thus expressed, the administrator immediately thereafter paid the three notes. This was long before the petition to sell lands, and thus these three notes were not involved in that petition.

There is some uncertainty in the record as to whether three of the eight heirs were present at the aforesaid consultations. The chancellor made no finding of fact on that issue, and the cause will have to go back that the

facts in this respect may be determined by the trial court. We say now, however, that the payments made by the administrator after consultation with and by the consent of the heirs, are final and conclusive as to those of the heirs who were consulted and who consented.

If these payments were now wholly disallowed, the amounts thereof would have to be returned to the estate by the administrator for distribution pro rata among the heirs, including those who were consulted and who consented to these payments. That those who were so consulted and who so consented cannot repudiate their consent and become the beneficiaries of their repudiation is settled in principle by what was said in Love v. Roebuck, 177 Miss. 375, 388, 169 So. 827, 829, a case wherein the payments made by the trustee would have been unlawful, and recoverable against him, except for the consent of the distributees, but wherein the court said, in part, as follows: "There is no such thing in equity as that a party or parties may expressly consent in due form to the doing of a particular act and thereafter turn upon the actor and recover money from him as a consequence of that same act."

There were no misrepresentations made by the administrator in the course of the stated consultations with the consenting distributees. The administrator said nothing upon the point whether the claims involved were legally probated. This feature was not discussed. The administrator, the attorney handling the estate, the clerk, and all others thought that the probate was in all respects valid. In Jordan v. Love, 171 Miss. 523, 528, 157 So. 877, attention was called to the fact that the purpose of the new statute, now section 1671, Code 1930, was to afford the heirs as well as other parties in interest a better record opportunity and means of information as regards claims presented against an estate. The records which revealed the invalidity of these three probates were open alike to these distributees as much so as to the administrator. He knew no more about it

than they did, and their opportunities in that respect were equal to his. The mistake made by all was, therefore, purely one of law. Consent by heirs or distributees to pay certain debts may not be withdrawn after payment in accordance therewith on the ground of mistake of law—no more so than may a party or parties withdraw from any other agreed arrangement after the other party has acted thereon, he being under the same mistake of law. Moreover, so far as we may now know, these heirs would, at that time, have consented and insisted that this hospital and the physicians' notes for their father's last illness should be paid, even if they had then been fully aware of the defect in their probate.

It is interesting to note that the fact is that even the attorneys for the heirs overlooked and failed to discover the legal defect in these probates until sometime after they had filed their original exceptions to the administrator's final account, and that it was later and by amended and supplemental exceptions and objections that the defects in the probates were for the first time brought into this estate proceedings.

But while heirs and distributees, so far as they are each concerned, may consent to the payment by the administrator of unprobated debts against the estate, and after such consent and the payment in pursurance thereof will, in the absence of fraud or misrepresentation, be precluded from any attempt on their part to charge the administrator therewith, this does not bind or affect the interests of those who did not so consent. So that what was done at the meetings hereinabove mentioned did not preclude those of the heirs and distributees who were never present at any of those meetings, and the payments on the three hospital and medical notes are not allowable out of their part of the estate.

The administrator contends, however, that the three notes were paid by him after an order of the court so to do, and that such an order ought to protect him even as against those of the heirs who were not at those meet-

ings and who therefore did not consent. This order was obtained on an ex parte petition. Section 1674, Code 1930, expressly declares that an administrator "shall not pay any claim against the deceased, unless the same has been probated, allowed, and registered." This means a valid probate; and the statute being expressly prohibitory, the court had and has no power upon ex parte petitions to authorize a payment in violation thereof. Lehman v. Powe, 95 Miss. 446, 456, 49 So. 622. The orders made by the court on the ad interim ex-parte petitions of the administrator for the payments do not protect the administrator against exceptions to his final account, save only as to those heirs or distributees expressly consenting at or about the time the payments were made. 24 C. J., p. 383, section 1064, and compare Sumrall v. Sumrall, 24 Miss. 258.

At the time of the meetings or conferences at which some of the heirs and distributees consented to the payment of the three claims, there were enrolled judgments against two of the heirs and distributees, and something has been said as to the competency of these two judgment debtors to consent to the payment of unprobated claims to the prejudice of their judgment creditors. This matter is not before us, because, as already mentioned, the chancellor has made no finding of fact as to who of the heirs and distributees were present at the time the consent was given, and so far as we now know, from the legal aspect, these two heirs and distributees may not have been present.

Affirmed on cross-appeal; reversed and remanded on direct appeal.

OPINION ON SUGGESTION OF ERROR.

PER CURIAM.—The first point argued on the suggestion of error is that the court erred in holding, if it did so hold, that the judgment creditors of N. N. Beavers, an heir of the decedent, are without right to except to

the payment by the administrator of the illegally probated claims of the Farmers & Merchants Bank. We made no decision on that point, for it was neither presented nor argued on the original submission. The only point made in the original briefs on this subject was: "Were the judgment creditors of N. N. Beavers and G. C. Beavers 'interested parties' under the statute providing for notice to 'interested parties' in a proceeding by an administrator to sell lands to pay debts?" We decided that question, not the question now for the first time presented and argued.

As to the other points, we adhere to our original opinion.

Overruled.