**AETNA CASUALTY AND SURETY COMPANY, etc., Plaintiff-Appellant,**

v.

**ATLANTIC NATIONAL BANK OF WEST PALM BEACH, Defendant-Appellee.**

**No. 29050.**

United States Court of Appeals, Fifth Circuit.

June 24, 1970.

Rehearing Denied Sept. 18, 1970.

Henry T. Courtney, Carl Pete Stephens, Jr., Stephens, Demos, Magill & Thornton, Miami, Fla., for plaintiff-appellant.

Harry A. Johnston, II, Johnston, Lilienthal & Johnston, West Palm Beach, Fla., for defendant-appellee.

Before JONES, WISDOM, and COLEMAN, Circuit Judges.

PER CURIAM:

We adopt the opinion of the district court, reprinted here as Appendix A. The judgment is affirmed.

### APPENDIX A

### SUMMARY FINAL JUDGMENT

Aetna Casualty and Surety Company, a corporation which maintains its principal place of business in Connecticut, instituted this action against the Atlantic National Bank of West Palm Beach, a banking corporation organized and existing under the federal law with its principal place of business in West Palm Beach, Florida. This controversy involves a sum of money in excess of $10,000, exclusive of interest and costs. Hence, the diversity jurisdiction of this Court has been properly invoked and the Court has jurisdiction over the parties thereto and the subject matter of this cause.

In its complaint Aetna alleges that it issued its bond in favor of the City of Tampa, Florida, in connection with the construction of an incinerator there by William A. Berbusse, Jr. of Florida, Inc., as general contractor, hereinafter referred to as "Berbusse". Aetna charges that Berbusse received from the City of Tampa $293,134.44 as a progress payment upon the contract for the construction of the incinerator and that this payment by the city was for the purpose of providing Berbusse with funds with which to pay materialmen and subcontractors who provided materials and services for the incinerator job; and that Berbusse deposited $201,500 of these funds in an account of Berbusse at the bank in question. Aetna then charges that the bank converted this deposit to its own use, making said funds unavailable to Berbusse for the payment to said suppliers and said contractors; that as a result thereof, Aetna as surety was called upon and did in fact make payment to said lienors; and Aetna claims to be subrogated to the rights of the City of Tampa, to the rights of Berbusse, and to those materialmen and subcontractors whom Aetna was required to pay by said bond.

The record of this cause, which now includes the complaint as amended, the answer, certain depositions and affidavits for and against the motion for summary judgment, clearly shows the following facts. Berbusse at all relevant times was a general contractor who operated extensively both on the East and West Coasts of Florida. At the time in question, Berbusse had three separate construction contracts in the Tampa area; one of them was for the construction of a hospital for private interests, and the other two contracts involved the construction of the incinerator in question and a library building for the City of Tampa; in addition thereto, Berbusse then had under construction two separate projects under separate contracts for Florida Atlantic University, at or near the City of Boca Raton, Florida.

At the time that the City of Tampa paid Berbusse said sum of $293,134.44, Berbusse had an account at the First National Bank in Palm Beach which had been somewhat inactive for a while. Berbusse also had an account at the defendant bank which had been quite active for some months prior to the transaction in question.

The sum of money which was paid to Berbusse by the City of Tampa upon the incinerator job was deposited by Berbusse in said account at First National Bank in West Palm Beach. Thereafter, Berbusse withdrew said sum of $201,500 from said account at the First National Bank in Palm Beach and deposited that amount in the Berbusse general account in the defendant bank. The deposition of William A. Berbusse, III, clearly shows that there was nothing about his deposit to indicate to the defendant bank the source of these funds, nor were the funds deposited in a way to suggest that they were trust funds, or escrow funds, or funds deposited for any specific purpose. In fact, the affidavit of Snyder, the executive vice president of the defendant bank, shows that the general account into which Berbusse deposited these funds was a running checking account that showed monthly balances as follows:

| December, 1966 | $206,418.00 |
| January, 1967 | 155,689.00 |
| February, 1967 | 110,939.00 |
| March, 1967 | 204,195.00 |
| April, 1967 | 248,838.00 |

The deposit in question in the amount of $201,500 was made on May 18, 1967. The Snyder affidavit further shows that during the four months next preceding the deposit in question, Berbusse had on three separate occasions deposited to this account funds in excess of $400,000.

The record discloses that in February, March and April, 1967, Berbusse executed and delivered to the defendant bank a series of notes totaling a principal sum of $350,000. The first of these notes in the amount of $100,000 was executed and delivered by Berbusse to the defendant bank on February 13, 1967, and was due and payable on May 15, 1967. An additional note was executed and delivered by Berbusse to the defendant bank on March 27, 1967, in the principal sum of $100,000, with a maturity date of June 26, 1967; an additional note was executed by Berbusse to the defendant bank on March 29, 1967, in the principal sum of $25,000, with a maturity date of June 27, 1967; and a final note was executed and delivered on April 3, 1967, in the amount of $75,000, with a due date of July 3, 1967. Each of said notes contained language whereby Berbusse granted to the bank a lien upon any and all Berbusse deposits in defendant bank for the payment of any notes that Berbusse had executed to the bank, and whereby the bank was authorized, at its option, to apply any such deposit against the payment of any such note, whether matured or unmatured.

The answer alleges and the affidavit of the executive vice president of defendant bank shows that in consideration for the loan which the bank made on March 29, 1967, in the amount of $25,000, and the loan which the bank made on April 3, 1967, for $75,000, evidenced by the last two promissory notes above-described, Berbusse agreed to assign as collateral a mortgage upon some real property; but that the collateral security was never obtained; and this fact, coupled with information which the bank received that Berbusse was in financial difficulty, resulted in a set off by the bank of the deposit in the sum of $201,-500 against the Berbusse indebtedness to the bank.

This cause is before the Court at this time upon the defendant bank's motion for summary judgment, which is supported by the affidavit and deposition of the bank's executive vice president and by certain answers to requests for admission and the deposition of William A. Berbusse, III. In addition, there is a deposition from the Comptroller of the First National Bank in Palm Beach which simply relates the status of the

Berbusse account in that bank and really adds nothing, one way or the other to the consideration of the instant motion. In opposition to the motion for summary judgment, counsel for Aetna filed an affidavit which simply identifies one Eugene Ladd as a bond claim analyst for Aetna and attaches the affidavit of Mr. Ladd. The Ladd deposition does no more or less than describe the bond that Aetna gave upon the Tampa incinerator job and show that Aetna has paid materialmen and subcontractors in various amounts which aggregate the said sum of $201,500. A very careful inspection of all of these items has been made by the Court, particularly the deposition of William A. Berbusse, III. Nothing appears to controvert the facts hereinabove previously stated. In fact, the deposition of Mr. Berbusse supports defendant bank's motion for summary judgment rather than to oppose it.

This Court has been unable to find in this entire record any genuine issue as to any fact which is material or relevant to the ultimate disposition of this cause. The only question remaining for the resolution of this cause is one of law, i. e., whether in this fact situation the bank could validly claim the said sum of $201,500 by way of set-off against the sum then owed to the bank by Berbusse, a portion of which indebtedness was evidenced by promissory notes then unmatured.

As previously stated, the promissory notes authorized a set-off before or after maturity. The notes also accelerated the payment thereof in the event of insolvency, or the institution of bankruptcy proceedings against the maker. On May 19, 1969, the day after the deposit of said funds in said account, Berbusse filed a voluntary petition in bankruptcy in this Court. There is no doubt that similar promissory note set-off provisions have been recognized and allowed by the Florida Court. Hawke v. Broward National Bank of Fort Lauderdale, 220 So.2d 678 (Fla.App.1969); McKee v. Hood, 312 F.2d 394 (5th Cir.

1963); and Ribaudo v. Citizens National Bank of Orlando, 261 F.2d 929 (5th Cir. 1958). Moreover, there is ample authority to permit set-off against an unmatured note where it is contractually provided for. 10 Am.Jur.2d, Banking, § 668.

In its brief, Aetna agrees with the general principle that a bank has a right in Florida to set-off against deposits made in the ordinary course of business; but urges that this is not so if the bank had actual knowledge that the funds deposited with it belonged to a party other than a depositor, or where the bank has knowledge of sufficient facts to charge it with notice of an existing interest of a third party in and to the deposited funds. However, Aetna has not directed this Court's attention to anything in this record which would bring this case within either of these exceptions. Everything in this record points to the fact that the account in question was a general account and that the defendant bank had no knowledge, actual or constructive, as to the source of the funds which were deposited, or that any third party had any interest therein. In ruling this case, this Court places reliance upon the cases of Ribaudo v. Citizens National Bank of Orlando, *supra*, and Kane v. First National Bank, 56 F.2d 534 (5th Cir. 1932). In Kane, a case factually close to the instant cause, the Court stated at pages 535 and 536:

\* \* \* Money or checks paid to him [contractor] as the work progresses are the property of the contractor unincumbered by any trust; just as are payments to others for goods manufactured or services performed. The contractor's banker may receive such checks and is not bound to see to their application, nor to ascertain the state of the contractor's account with each contract; nor, if he knows it, need he govern himself in any wise with reference thereto. No wrong is done to the contractor's surety in recognizing the contractor's full title to such checks by taking them on deposit with all the

**578**

consequences attaching to such deposit. For the reason stated, it is

Ordered and adjudged that the complaint herein be and the same is hereby dismissed at the cost of and with prejudice to the plaintiff.

/s/ CHARLES B. FULTON
Chief Judge.