A. Spencer GILBERT, III, Trustee in Bankruptcy for Char-Mac Enterprises, Inc., Trustee in Bankruptcy for Charles E. Duran, and Trustee in Bankruptcy for Rachel R. Duran, Plaintiff,

v.

FIRST NATIONAL BANK OF JACK-SON, MISSISSIPPI, Defendant.

Civ. A. No. J76–305(C).

United States District Court,
S. D. Mississippi,
Jackson Division.

Jan. 5, 1978.

A. Spencer Gilbert, III, David H. Nutt, Jackson, Miss., for plaintiff.

W. F. Goodman, Jr., Thomas C. Gerity, Watkins & Eager, Jackson, Miss., for defendant.

WILLIAM HAROLD COX, District Judge.

This controversy involves the propriety and legality of the action of the First National Bank in applying certain fund as a set off against a secured debt of the bankrupts to the bank. Charles E. Duran was the owner of several different corporations, including Char-Mac Enterprises, Inc., and was engaged in a practice of kiting checks between Citizens National Bank (CNB) and

First National Bank (FNB), both in Jackson, Mississippi. The plaintiff contends that the course adopted by First National Bank in satisfying its indebtedness was done with the actual intent to hinder, delay or defraud the creditors of the bankrupts in violation of 11 U.S.C. § 107d(2)(d).[1]

The defendant denies any intent to hinder, delay, or defraud creditors but insists that its actions at all times were in keeping with its legal rights. Charles E. Duran, acting for his several corporations and engaged in a vast dollar amount of transactions, in the case at bar would draw checks on CNB and deposit them in FNB for collection without any kind of authority or approval from CNB and in such manner build a fictitious balance on deposit in the bankrupts' account at FNB until such fraud was discontinued and stopped. On April 2, 1974, FNB became suspicious of Duran's kiting activities. Thus for approximately two days, or through April 4, 1974, it continued to accept deposits through CNB while discontinuing paying out any withdrawals from FNB. On April 4, 1974, FNB discontinued accepting any deposits drawn by the bankrupts through CNB. On April 9, 1974, FNB utilized a provision in its secured notes of the bankrupts to accelerate and mature its indebtedness and to use the accumulated balance of bankrupts' accounts with the bankrupts to pay their indebtedness in the amount of $496,241.40.[2]

First National Bank exercised its option under the conditions of said notes to accelerate and declare due and payable all of the obligations of said bankrupts. Under the circumstances and conditions existing between FNB and with such notes as FNB had which CNB sought to have considered as knowledge of such check kiting practices of the bankrupts, CNB sued FNB for stopping payment on those checks drawn on FNB after FNB stopped payment thereon while continuing to receive deposits into said account for approximately two days. Citizens National Bank contended that FNB owed it the courtesy, if not the duty, to advise it as to what Duran was suspected of doing in connection with such kiting option. The Chancery Court of Hinds County sustained a demurrer to said bill of complaint shown in this record, and the Supreme Court of Mississippi affirmed said decision which in effect held that these two banks were acting in competition with each other and dealt at arm's length with each other, and that FNB had no duty or obliga-

---

1. 11 U.S.C.A. § 107d(2)(d) provides: "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

2. On the face of each collateral note signed by the bankrupts to FNB is the following provision: ". . . Upon the happening of any of the following events, each of which will constitute a default hereunder, all liabilities of Maker to Bank shall become immediately due and payable at the option of Bank; . . . (5) determination by any officer of Bank that a material adverse change has occurred in the financial condition of Maker or any party hereto. Upon occurrence of any such event or at any time thereafter, Bank shall have the remedies of a secured party under the Uniform Commercial Code of Mississippi . . .

"Bank shall have a security interest in the moneys or property at any time in possession of Bank belonging to Maker or any other party liable hereon and any deposit due by Bank to Maker or any other such party, all of which shall be treated as security for payment of this note. Bank may, at its option in event of default, set off such moneys, property or deposits against this note or any other obligation of Maker . . ."

tion of any kind to treat CNB as a fiduciary.[3]

That position of these two banks has not been altered or changed in any respect by anything subsequently done. Thus, this Court is confronted with a situation where the question before the Court involving the

**3.** *Citizens National Bank v. First National Bank*, 347 So.2d 964 (Miss.) where the court reaffirmed its long standing decision to the effect that the relationship between the bank and the depositor is that of debtor and creditor, and that a check is merely an order and not an assignment of funds on deposit; that the bank may refuse to pay a check although the depositor has sufficient funds to his credit to cover the check, and the holder of the check has no cause of action against the bank. The holder of the check must look to the drawer of the check and only the drawer can complain about the bank not honoring his check. The bill of complaint could not withstand the impact of a demurrer. Significantly, on presentation and consideration of the sweep of the doctrine of res judicata, the plaintiff here is confronted with the established fact of the scope and range of res judicata under the circumstances and conditions of the instant case.

**4.** *National Life & Accident Insurance Co. v. Prather*, 172 Miss. 567, 161 So. 117, 118 holds: "The rule with reference to res adjudicata is that, not only are matters included which are actually pleaded, but all matters which could have been set up in a former suit. See Mississippi Digest Annotated, Judgments, § 713; *Dean v. Board of Supervisors*, 135 Miss. 268, 99 So. 563; *Bates v. Strickland*, 139 Miss. 636, 103 So. 432, and other cases cited in the Mississippi Digest."

*Browne v. Merchants Co.*, 186 Miss. 430, 191 So. 120, 122 the Court held: "We think the judgment of the court below was correct because the rule is that all matters embraced in the former judgment and all matters that could have properly been pleaded in said cause are concluded by the judgment rendered. Mississippi Digest Annotated, Volume 9, Judgment, 713, collates the authorities upon the proposition. It is therein stated that a judgment or decree on the merits rendered in a former suit between the same parties and their privies upon the same cause of action, by a court of competent jurisdiction, is conclusive, not only as to all matters determined, but also is conclusive as to matter which might or ought to have been litigated. The former suit was for the same collision and between the same parties for the same negligence of the alleged driver, and suit was brought some two years after the alleged injury occurred, and the matters attempted to be set up to distinguish facts in the present case from the former case could then

rights of the Trustee in Bankruptcy of these bankrupts to have set off the deposits in FNB against the established obligations of these bankrupts is presented. The question of set off was not involved in the proceeding but could have been involved between the parties and their privies to that state litigation.[4]

have been plead, and certainly should have been known by diligent inquiry as to the facts."

*Pray v. Hewitt et ux.*, 254 Miss. 20, 179 So.2d 842, 844 the Court held: "The Latin idiom 'res judicata' means the thing has been decided. In law, it means the same issue has been decided by a court of competent jurisdiction. Since the time of ancient Roman law, there have been four conditions essential to establish the plea of res judicata. They are (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity of the quality or character in the person against whom the claim is made. 50 C.J.S. Judgments § 598, Essential elements, p. 18 (1947). All of the foregoing elements of res judicata appear in the pleading in the case at bar.

"There is another reason why the plea of res judicata should have been sustained as a bar to the instant suit: The original contract between the parties with reference to the land was attached to the answer in the former suit. In that suit the answer alleged that the Hewitts fully complied with the attached contract, and denied fraud or false representations in obtaining the deeds. The contract was pertinent to the issue involved and was pleaded and tendered as an issue in the former suit. Therefore all rights to enforce the contract were settled by the former decree.

"It is pointed out in 50 C.J.S. Judgments § 716, p. 186 (1947) that 'The rule is often broadly stated in general terms that a judgment is conclusive not only on the questions actually contested and determined, but on all matters which might have been litigated and decided in that suit.' This rule has been approved and adopted in this State. See *Johnson v. Bagby*, 252 Miss. 125, 171 So.2d 327 (1965); *Taylor v. Bell*, 194 Miss. 112, 11 So.2d 825 (1943); *Townsend v. Beavers*, 185 Miss. 312, 188 So. 1, 189 So. 90 (1939); *National Life & Acc. Ins. Co. v. Prather*, 172 Miss. 567, 161 So. 117 (1935); *Lion Oil Ref. Co. v. Crystal Oil Co.*, 171 Miss. 36, 156 So. 593 (1934); *Darrow v. Moore*, 163 Miss. 705, 142 So. 447 (1932); *Love v. Mayor & Bd. of Aldermen of Yazoo City*, 162 Miss. 65, 138 So. 600 (1932); *Gaines v. Kennedy*, 53 Miss. 103 (1876)."

*Forbes et ux. v. Columbia Pulp and Paper Co., Inc.*, Miss., 340 So.2d 734, 736 the Court held: "Res judicata is not only a bar to further litigation concerning the exact issues of the

This case involves the same funds which were involved in that state case, and these bankrupts and their trustee are certainly privies thereto. The question of set off between the parties to the instant case was not before the Court in the bill of complaint and judgment of the trial court on the demurrer and in the Supreme Court of Mississippi on its affirmance of that final decree in the Chancery Court of Hinds County, Mississippi.

The principle of set off in a case of this kind has been before the Court on many occasions and equity has always recognized and applied the doctrine in wholesome instances. There is simply nothing to be found as an ultimate fact which will support any contention of fraud or unfairness just because FNB suspected Duran of kiting checks and thus ballooning his deposits with FNB even though it continued to allow Duran to make deposits into said account, stopped all cashing of checks on said account. First National Bank simply

had no fiduciary relationship with CNB and was not obliged to reveal to it what it knew and what it suspected since CNB was a competitor in active competition with it at all times during every phase of its activities involving these checks of Duran drawn on CNB and deposited in his accounts with FNB. The plaintiff charged and must prove by the greater weight of the more convincing evidence that defendant acted as it did with intent to hinder, delay, or defraud the creditors of the bankrupts. That it has not done in this case.[5]

The Trustee in Bankruptcy as plaintiff has presented to this Court a question of fact for its resolution. The Trustee contends and must prove to prevail that the defendant under these circumstances before the Court acted with actual intent as distinguished from intent presumed in law to hinder, delay, or defraud either existing or future creditors of these bankrupts. That it has not done.[6]

former lawsuit, but goes further as set out by this Court in the case of *Pray v. Hewitt*, 254 Miss. 20, 179 So.2d 842 (1965), wherein the Court said: '. . . [T]he rule is often broadly stated in general terms that a judgment is conclusive not only on the questions actually contested and determined, but on all matters which might have been litigated and decided in that suit.' This rule has been approved and adopted in this State. 254 Miss. at 24, 179 So.2d at 844. Likewise, the Court stated in the case of *Golden v. Golden*, 246 Miss. 562, 151 So.2d 598 (1963): Moreover, a prior suit is conclusive in a subsequent suit not only of matters actually determined, but also matters which could and should have been determined in the prior suit. 246 Miss. at 568, 151 So.2d at 600."

5. *United States v. Bank of Shelby* (5 CA) 68 F.2d 538, 539 the Court held: "The general rule in the absence of statute is that to set off an unmatured debt because of insolvency requires the action of equity; *Scott v. Armstrong*, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; *Hecht v. Snook*, 114 Ga. 921, 41 S.E. 74; but that insolvency alone is a sufficient basis in equity for the set-off not only as between the parties but as against a receiver, an assignee for the benefit of creditors, a trustee in bankruptcy, or a garnisher. *Scott v. Armstrong, supra*; *Nashville Trust Co. v. Fourth National Bank*, 91 Tenn. 336, 18 S.W. 822, 15 L.R.A. 710; *Hayden v. Citizens' National Bank*, 120 Md. 163, 87 A. 672, 46 L.R.A. (N.S.) 1059, Ann.Cas. 1915A, 686; *Wunderlich v. Merchants' Nat. Bank (Ar-*

*mitage Herschel Co. v. Jacob Barnett Co.)*, 109 Minn. 468, 124 N.W. 223, 27 L.R.A. (N.S.) 811, 134 Am.St.Rep. 788, 18 Ann.Cas. 212. But there is present here another potent fact, that the two obligations arose out of the same transaction and the one is the consideration for the other. It would be manifestly inequitable to enforce one obligation when the other cannot be enforced. This element was given effect in a case from Pennsylvania, where there was no chancery jurisdiction as such, in *Dushane v. Benedict*, 120 U.S. at page 639 et seq., 7 S.Ct. 696, 30 L.Ed. 810. In *Scott v. Armstrong, supra*, the circumstances were like those of the case at bar except that it was the bank which became insolvent. It was said at page 507 of 146 U.S., 13 S.Ct. 148, 150: 'Courts of equity frequently deviate from the strict rule of mutuality when the justice of the particular case requires it, and the ordinary rule is that, where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other.' "

The principles and application of set off are illustrated and demonstrated in *Aetna Casualty and Surety Company v. Atlantic National Bank of West Palm Beach* (5 CA) 430 F.2d 574.

6. *In the Matter of Southern Land Title Corporation, Debtor; In Re Southern Land Title Corporation and the Five Flags Building, Inc.*
*Appeal of Albert J. Ward, Jr., Trustee* (5 CA) 474 F.2d 1033.

The plaintiff, as the duly appointed, qualified and acting Trustee of these three bankrupts, has instituted a five count complaint in this Court on October 15, 1976 and seeks to recover from FNB a large sum of money. This Court has heard and considered this case extensively, together with excellent briefs of counsel, and is of the opinion and so holds that the plaintiff has not established his claim by the greater weight of the more convincing evidence, but the evidence and testimony in this case has demonstrated to this Court that the complaint in its entirety is without merit and should be dismissed. The complaint of the plaintiff in this case is without merit and will be dismissed at his cost.

A judgment accordingly may be prepared and presented to the Court for entry within five days under the rules of this Court.