LETTS, Judge.
This case arises because the trial court granted a motion to dismiss following it with a final judgment in favor of the mov-.ant. We affirm.
The background involves a large construction company with a loan outstanding at the appellee bank, said loan unrelated to any construction projects affected hereunder. During the pendency of the loan the appellant, Aetna Casualty, had issued a series of bonds encompassing various building projects undertaken by the construction company. Subsequently the construction company was unable to pay its subcontractors and materialmen, and Aetna was forced to do so by reason of said bonds. Meanwhile the construction company had received about $1.9 million in partial pay- *688 merits from its construction contract customers which payments it paid into its general account at the bank. In due course the bank removed the funds in the general account as a set-off against the outstanding bank loan and Aetna contests this removal, claiming the money in the account should have been earmarked for the subcontractors and materialmen which Aetna had to pay off on its bonds. We disagree.
Basically, in Count I for conversion, Aetna argues that the bank had sufficient knowledge of the outstanding claims of the subcontractors and materialmen that it should have, by reason of that knowledge, frozen the funds and held them in trust for the benefit of those subcontractors and ma-terialmen. However, no factual allegation is made as to why this would be so, except the statement that the source of the funds (i. e., progress payments) was known to the bank. We cannot see why knowledge of the sources of deposited checks would make any difference. These deposits were not placed in a trust account, nor is there any allegation that the deposit checks bore any legends restricting their use. Obviously, absent a court order, the bank could not have dishonored any properly drawn checks written on that account by its customer Wiggs and Maale, no matter who the payee was, so long as sufficient funds remained. Therefore, it is impossible to perceive how the bank could be guilty of conversion or a breach of some supposed fiduciary duty to Aetna by either honoring its customer’s checks or otherwise proceeding under any other agreements with said customer. We note the case of Kane et al. v. First National Bank of El Paso, Texas, 56 F.2d 534 (5th Cir. 1932) wherein the Court held:
In the absence of statute or stipulation otherwise, the general responsibility of the contractor is credited in contracting with him, and his general resources are drawn on by him in executing the contract. Money or checks paid to him as the work progresses are the property of the contractor unencumbered by any trust, just as are payments to others for goods manufactured or services performed. The contractor’s banker may receive such checks and is not bound to see to their application, nor to ascertain the state of the contractor’s account with each contract; nor, if he knows it, need he govern himself in any wise with reference thereto. No wrong is done to the contractor’s surety in recognizing the contractor’s full title to such checks by taking them on deposit with all the consequences ordinarily attaching to such deposit. (emphasis supplied)
This same quotation was adopted by Judge Fulton in the case of Aetna Casualty and Surety Co. v. Atlantic National Bank of West Palm Beach, 430 F.2d 574 (5th Cir. 1970). It is true that Judge Fulton also indicated that actual knowledge that the funds deposited, belonged to a party other than the depositor might make a difference. However, the complaint here under review makes no such suggestion of contrary ownership and indeed concedes the funds were deposited in the construction company’s own account. The complaint alleges only that the funds in the account should have been earmarked for unpaid bills on account of notice of an “existing interest” by third parties. We are aware that Judge Fulton further indicated that notice of an existing third party interest in and to the funds might also affect the result. We are not sure if this latter language was essential to Judge Fulton’s decision but if it was, we do not agree with it nor does it comport with his adoption of the quote from the Kane case set forth above.[1]
It would appear to us that a bank must always be on notice of actual or potential third party claims in and to the business accounts of its customers (payroll for instance). Could we walk into the bank and by saying:
“We are owed money by the construction company so do not honor any of their checks payable to anyone else and especially do not exercise any set-off rights that you have.”
*689 thereby freeze all funds in a general account over which we have no control and on which our names do not appear? We think not. See Northside Bank of Tampa v. Electrical Enterprises, Inc., 353 So.2d 927 (Fla.2d DCA 1978).
We likewise are of the opinion that Count II does not state a cause of action. This count sounds in breach of a contract by the bank because it reneged on an oral promise to subordinate its loan to another which Aetna “proceeded to negotiate.” However, there is no allegation that the negotiations were successful or that any subordination agreement was presented never mind refused. As such there is no showing of consideration or performance under the alleged oral contract.
Without further discussion we find that Count III failed to state a cause of action for tortious interference with a business relationship.
DAUKSCH and BERANEK, JJ., concur.

. See the emphasized portion.